J-A24030-18

2019 PA Super 15

| AMERICAN SOUTHERN INSURANCE CO., INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JAMES A. HALBERT, JULIE BETH WRIGHT HALBERT, DOUGLAS E. HALBERT , DAVID R. HALBERT AND VIRGINIA V. HALBERT | : | No. 504 MDA 2018 |
| Appellants | : | |

Appeal from the Order Entered February 22, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2017-CV-298-CV

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.:          **FILED: JANUARY 17, 2019**

James A. Halbert, Julie Beth Wright Halbert, Douglas E. Halbert, David R. Halbert, and Virginia Halbert (collectively, the Halberts) appeal from the order entered February 22, 2018, granting American Southern Insurance Co., Inc. (American Southern) summary judgment in this indemnity contract dispute. As the terms of the contract are clear and dispositive, and further, as Halberts' claims on appeal are devoid of merit, we affirm.

American Southern is in the business of providing performance surety bonds, including those related to completion of public improvements. In May 2006, the Halberts individually signed a general agreement of indemnity in favor of American Southern. The agreement set forth the terms of indemnification.  In relevant part, the Halberts agreed to indemnify American

Southern from any claim or liability arising from the issuance of a performance bond. **See** American Southern's Complaint, 01/10/2017, Exhibit A ("General Agreement of Indemnity") (hereafter, Agreement), ¶ 2. Moreover, the Agreement granted American Southern the sole authority to determine whether a claim brought pursuant to a performance bond was valid:

> The Company [*i.e.*, American Southern] shall have the exclusive right to determine for itself and the Indemnitors [*i.e.*, the Halberts] whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

Agreement, ¶ 5.

Thereafter, and in reliance upon the Agreement, American Southern issued a performance bond in favor of North Cornwall Township, Pennsylvania, in the original amount of $650,580.63, later revised by bond rider to $740,000.00, to secure completion of certain subdivision improvements by Oaklea Corporation for a local development. **See** American Southern's Complaint, 01/10/2017, Exhibit B ("Subdivision Performance Bond") (hereafter, Performance Bond). Mr. James A. Halbert signed the performance bond as president of Oaklea. **Id.**

In July 2016, the township advised American Southern that it had made a demand upon Oaklea to complete required improvements but had received no response or performance. Accordingly, the township demanded the improvements or compensation from American Southern, which in turn sent notice to the Halberts, who did not respond.

In June 2017, American Southern commenced this litigation, seeking damages arising from its performance under the surety bond. In response, the Halberts answered that the improvements demanded by the township were unnecessary. **See** Halberts' Answer, 02/07/2017, at ¶¶ 18-27 (unpaginated). In addition, the Halberts pleaded new matter, including several affirmative defenses to American Southern's claims. **Id.** at "New Matter" ¶¶ 1-13 (unpaginated). American Southern filed a reply thereto.

In October 2017, American Southern filed a motion for summary judgment, asserting that "[t]here are no genuine issues of material fact in dispute and American Southern is entitled to judgment as a matter of law." American Southern's Motion for Summary Judgment (Motion), 10/31/2017, at ¶ 24. In their response, the Halberts did not counter American Southern's assertion with evidence of record, choosing instead to reiterate prior averments that the improvements demanded by the township were unnecessary. **See** Halberts' Response in Opposition (Response), 12/04/2017, at ¶¶ 11, 16-19, 23-25.[1] Further, the Halberts cited no evidence essential to any affirmative defense. **See generally id.**

---

[1] In several paragraphs, the Halberts also averred that they could not challenge the evidence provided by American Southern establishing that it had relied upon the Agreement as a condition of issuance for the Performance Bond because "[n]o discovery in this matter has been undertaken." **See, e.g.**, Response at ¶ 23(b). This is specious, as no discovery was requested. **See generally** Pa.R.C.P. 4001-25.

In February 2018, the lower court held argument on the motion for summary judgment. At the argument, which was not transcribed, the Halberts conceded that Paragraph 5 of the Agreement applied to the improvements demanded by North Cornwall Township. **See** Summary Judgment Order, 02/22/2018. Nevertheless, the Halberts raised two affirmative defenses not previously pleaded. According to the Halberts, (1) the Agreement was a contract of adhesion, and (2) the federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691, precluded any judgment against Ms. Julie Halbert. **See** Statement in Absence of Transcript, 03/26/2018. Following argument, the court granted summary judgment, concluding that Paragraph 5 of the Agreement "negates [the Halberts'] sole defense that the requested improvements were not necessary." Summary Judgment Order at 1. In addition to this ruling, the court explicitly rejected the Halberts' assertion that the Agreement was unconscionable as a contract of adhesion; however, it did not address the Halberts' purported ECOA argument. **Id.** at 2.

The Halberts timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. In response, the lower court issued a statement directing our attention to its prior order. **See** Pa.R.A.P. 1925(a) Opinion, 04/25/2018.

On appeal, the Halberts raise the following issues:

1. Whether the trial court erred by ruling the contract at issue was not a contract of adhesion.

2. Whether the trial court erred by ruling Julie Halbert did not have a defense under the Equal Credit Opportunity Act, ("ECOA") [sic] 15 U.S.C. §1691, and Regulation B ("Reg B"), 12 C.F.R., Part 202, et seq.

- 4 -

Halberts' Br. at 2.

Before we address the Halberts' arguments, we note the following.

Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary.

*Estate of Agnew v. Ross*, 152 A.3d 247, 259 (Pa. 2017) (citations omitted).

The Pennsylvania Rules of Civil Procedure recognize two species of summary judgment:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. Thus, we have previously remarked, "a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury."

***Cigna Corp. v. Executive Risk Indem., Inc.***, 111 A.3d 204, 210-11 (Pa.Super. 2015) (citation omitted).

Here, following the close of pleadings, American Southern sought summary judgment of the first species, asserting that "[t]here are no genuine issues of material fact in dispute and American Southern is entitled to judgment as a matter of law." Motion at ¶ 24. It supported this assertion with evidence of record, setting forth the terms of the Agreement, the Performance Bond, the township's demands for performance, American Southern's invocation of the Agreement, the Halberts' failure to perform and breach of the Agreement, and American Southern's resulting damages. ***Id.*** at 2, 7, 8, 9, 10, 12, 14, 19-23.[2]

_____

[2] We note that American Southern supported its assertion of damages by affidavit. ***See*** Motion, ¶¶ 20-22, 23(h), Exhibit A (Affidavit of Jerry Underwood, Vice President of American Southern). The Halberts challenged these assertions by averring that "[n]o discovery has been undertaken to determine the veracity" of the affidavit, Response at ¶¶ 20-22, and "[t]he demands for [sic] improvements were unnecessary." ***Id.*** at ¶ 23(e). It is not clear from these averments whether the Halberts sought relief pursuant to ***Nanty-Glo v. American Surety Co.***, 163 A. 523 (Pa. 1932). Further, although they cited ***Nanty-Glo*** in their supporting brief, the Halberts presented no argument premised upon it. ***See*** Halberts' Response Memorandum, 12/04/2017, at 2-3. Rather, the Halberts again denied that the improvements were necessary and suggested that it was unclear whether the Performance Bond issued in reliance upon the Agreement. ***Id.*** at 3.

The ***Nanty-Glo*** rule provides that "[t]estimonial affidavits [or depositions] of the moving party or [its] witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the factfinder." ***Shamis v. Moon***, 81 A.3d 962, 965 (Pa.Super. 2013). Thus, it may be relevant to this case. Nevertheless, the Halberts failed to preserve any such claim for relief in

Pennsylvania Rule of Civil Procedure 1035.3 governs a non-moving party's response to a motion for summary judgment and provides in relevant part:

> [T]he adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
>
> > (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion[.]

Pa.R.C.P. 1035.3(a).

In their response, the Halberts cited no "evidence in the record controverting" the evidence cited by American Southern. *Id.* Further, though permitted by rule to do so, the Halberts made no effort to "supplement the record or set forth the reasons why" they could not do so. Pa.R.C.P. 1035.3(b). Rather, the Halberts merely reiterated the denial repeatedly set forth in their answer, that the improvements were unnecessary. **Compare** Halberts' Response at ¶¶ 11, 16, 17, 18, 19, 23, **with** Halberts' Answer, at ¶¶ 18-27.

Rule 1035.3 explicitly prohibits a party from "rest[ing] upon the mere allegations or denials of the pleadings." Pa.R.C.P. 1035.3(a). Thus, the Halberts' Response was deficient, and summary judgment was properly entered against them. **See** Pa.R.C.P. 1035.3(d).

---

their Pa.R.A.P. 1925(b) statement, nor do they attempt to argue the claim on appeal. Accordingly, we deem it waived. *Id.* at 971 n.10; **Lineberger v. Wyeth**, 894 A.2d 141, 149 (Pa.Super. 2006).

Moreover, the Halberts conceded during oral argument that the terms of the Agreement applied to the improvements demanded by North Cornwall Township. **See** Summary Judgment Order at 1; **see also** Response at ¶ 23(a) (admitting that each of the Halberts had executed the Agreement). Paragraph 5 of the Agreement grants American Southern the exclusive right to determine whether claims such as the one brought by the township "shall be settled or defended." Agreement at ¶ 5. As noted by the lower court, "[t]his [provision] negates [the Halberts'] sole defense that the requested improvements were not necessary." Accordingly, as we discern no error in the court's decision, we shall affirm the order granting American Southern summary judgment.

We now address the Halberts' arguments on appeal. According to the Halberts, summary judgment was inappropriate because (1) the Agreement was a contract of adhesion and (2) the ECOA, as enforced by federal regulation, precluded any judgment against Ms. Julie Halbert.

Both of these arguments raise affirmative defenses. **See** Pa.R.C.P. 1030, 1032. "An affirmative defense is distinguished from a denial of facts which make up the plaintiff's cause of action in that a defense will require the averment of facts extrinsic to the plaintiff's claim for relief." **Coldren v. Peterman**, 763 A.2d 905, 908 (Pa.Super. 2000).

Generally, failure to properly plead an affirmative defense constitutes a waiver of that defense. **See Charles v. Henry**, 334 A.2d 289, 291 (Pa. 1975). However, this Court has declined to find waiver if an opposing party fails to object to an improperly pleaded affirmative defense. **See Pollina v. Dishong**,

98 A.3d 613, 617 n.3 (Pa.Super. 2014). While the Halberts did not raise these claims in their Answer to American Southern's Complaint, and they did not seek leave to amend their pleadings, the certified record does not reveal whether American Southern raised an objection with the lower court. *See* American Southern's Br. at 4 n.2 (acknowledging the Halberts raised these claims during argument but failing to cite where in the record any objection was preserved); *see also* Pa.R.A.P. 1923 (defining procedure supplementing record where no transcript is available). Thus, we decline to find waiver based on this procedural error. *Pollina*, 98 A.3d at 617 n.3.

Nevertheless, this does not eliminate the Halberts' obligation to support their claims with evidence, and they have failed to do so. *See* Pa.R.C.P. 1035.3(a)(1).

"An adhesion contract is a standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010). The manner in which a party may establish that a contract is one of adhesion is dependent upon "the particular circumstances and parties involved." *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1067 (Pa.Super. 1992). The Halberts have failed to cite any evidence of record, detailing circumstances or the parties involved, that would support a finding that the Agreement was a contract of adhesion. *See generally* Halberts' Response; *see also* Summary Judgment Order at 2

(observing that parties entered Agreement for commercial purposes and were not "unsophisticated consumers who require protection").

Not every contract of adhesion is unenforceable. **Denlinger**, 608 A.2d at 1066. The doctrine of unconscionability provides an affirmative defense to an adhesion contract's enforcement. **Id.** at 1067 ("[T]he party challenging the contract or provision bears the burden of affirmatively pleading and proving the unconscionability …"). There are two requirements. "First, for a contract or a term to be unconscionable, the party signing the contract must have lacked a meaningful choice in accepting the challenged provision. Second, the challenged provision must 'unreasonably favor' the party asserting it." **Id.** at 1068. The Halberts cite no evidence of record that would establish either of these requirements. **See generally** Halberts' Response; **see also, e.g.**, **Denlinger**, 608 at 177-78 (suggesting there must be evidence a contract's terms were non-negotiable or that terms were dictated by "an exclusive supplier of rare or much-sought-after goods").

The Halberts' ECOA claim fares no better.

> The ECOA was enacted to ensure fairness in creditors' consideration of credit applications. Through the ECOA, Congress chose to protect women from credit discrimination by requiring that creditors treat all credit applicants—male and female, married and unmarried—in an identical manner. On the other hand, Congress did not enact the ECOA to permit permissibly bound debtors to escape contractual liability when called upon to perform.
>
> Guarantors are considered "applicants," and thus are protected by the ECOA. A guarantor may assert an ECOA violation as a defense to a state-court confession of judgment. If the defense is

successful, the guarantor's obligation is voided, but the underlying debt and any other guarantees are not voided.

***Sw. Pa. Reg'l Council, Inc. v. Gentile***, 776 A.2d 276, 281-82 (Pa.Super. 2001) (internal punctuation and formatting modified; citations omitted). However, the Agreement signed by the Halberts was not a credit agreement— it did not provide a right to defer payment on a debt. Rather, it created a contractual obligation for the Halberts to compensate American Southern for losses it might incur due to Oaklea's failure to complete improvements required by the Performance Bond. ***See Capitol Indem. Corp. v. Aulakh***, 313 F.3d 200, 201 (4th Cir. 2002) ("[A] surety bond does not constitute a credit transaction.").[3] Thus, an ECOA defense has no relevance in this matter.

Further, even if we were to accept the Halberts' claim as relevant, they have failed to cite evidence of record that would support such a claim. For example, federal regulations provide, in part, that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. 202.7(d)(1). However, the record includes no evidence documenting the marital status of Ms. Julie Halbert or anyone else, nor does it document whether any of the Halberts, including Mr. James Halbert, meet the necessary "standards of creditworthiness." ***Id.***

---

[3] ***Huber v. Etkin***, 58 A.3d 772, 779 n.7 (Pa.Super. 2012) (*en banc*) (noting we may rely on federal precedent to the extent we find it persuasive).

Lacking any evidence to support their claims on appeal, the Halberts are due no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/17/2019